# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

September 15, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**PATRICIA SCHETROMPF,**
**Claimant Below, Petitioner**

**vs.)    No. 16-1089** (BOR Appeal No. 2051326)
                    (Claim No. 2014020224)

**GUARDIAN FIBERGLASS, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Patricia Schetrompf, by Robert L. Stultz, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Guardian Fiberglass, Inc., by T. Jonathan Cook, its attorney, filed a timely response.

The issue on appeal is whether Ms. Schetrompf developed an occupational disease in the course of and resulting from her employment. The claims administrator rejected the claim on March 5, 2014. The Office of Judges affirmed the decision in its May 13, 2016, Order. The Order was affirmed by the Board of Review on October 21, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Schetrompf, a plant worker, alleges that she developed fibrosis and chronic obstructive pulmonary disease in the course of and resulting from her employment. A November 5, 1998, industrial hygienist report by David Duffy, CIH, Senior Occupational Health Specialist states that an occupational health survey was taken to evaluate employees' exposure to noise, fiberglass, formaldehyde, and ammonia. All formaldehyde exposures were within the action and permissible exposure levels, but the reported noted that formaldehyde concentrations were significant in the resin room, the pit, and near the resin spill. Fiberglass dust and fiber levels were higher than expected but still within the threshold limit. Ms. Schetrompf did not participate in this study.

1

An industrial hygienist report by Industrial Environmental Health Consultants dated October 1, 2008, states that a survey was conducted on July 29, 2008; July 30, 2008; and September 17, 2008. All samples taken were less than the action level. Samples for fiberglass were less than the exposure limits as were those taken for dust and silica. One formaldehyde sample taken in July was 42% greater than the Occupational Safety and Health Administration guidelines but eight resamples taken after were well within permissible limits. Ms. Schetrompf did not participate in this study.

On November 11, 2013, a pulmonary function test by Abdul Waheed, M.D., indicated that the FEV1 was 46% and FEV1/FVC was normal. There was mild airway obstruction and the maximum voluntary ventilation was reduced. There was no significant improvement with a bronchodilator. Flow volume loops showed the loops were of abnormal shape, indicating restrictive pulmonary disease. Total lung capacity indicated mild restrictive pulmonary disease as well. Blood gas showed mild hypoxemia. Dr. Waheed concluded the study was abnormal due to mild airway obstruction without significant reversible bronchospasm, significantly reduced diffusion capacity suggesting significant diffusion abnormalities, and room air PaO2 of sixty-eight. He stated that the data is suspicious for underlying emphysema.

In a December 12, 2013, letter, Julie Williams, EHS Manager for the U.S. Department of Labor, Occupational Safety and Health Administration, sent a letter stating that a complaint had been received on December 10, 2013. Personnel conducted a visual investigation into the presence of bird waste and employee exposure. As a result, it was noted that the distribution area should be prioritized regarding clean-up and extermination.

The January 25, 2014, employee's and physician's report of injury indicates Ms. Schetrompf filed for an occupational injury to her lungs. She described the injury/disease as breathing smoke and dust contaminated with pigeon waste. Dr. Waheed diagnosed idiopathic pulmonary fibrosis and chronic airway obstruction due to an occupational lung disease. The claims administrator rejected the claim on March 5, 2014.

Ms. Schetrompf testified in a deposition on July 25, 2014, that Guardian Fiberglass, Inc., is a distribution warehouse. She started working there in May of 2004. The warehouse had dock doors that remained open at all times. In the course of her employment she drove a forklift, stacked products on pallets, and wrapped them to be shipped. She stated that the products were covered in tarps that had to be removed each time. This could cause bird waste to fly into the air. She alleges that she was exposed to bird droppings every day. She stated that she thought her breathing problems are due to dust and bird droppings, as well as smoke in the warehouse. She said there was smoke in the warehouse every day due to insulation production on the other side of the building. When she was preparing orders, she used a four foot wide dust mop to clear dust from the surfaces of the products. She prepared orders about once a week. Ms. Schetrompf admitted that she smoked a pack of cigarettes a week from age sixteen to thirty. She currently has shortness of breath with any activity. On cross examination, she stated that the bird waste was mainly in the docks and it would blow inside. There was little bird waste actually in the warehouse. Ms.

Schetrompf stated exposure to smoke from the insulation ovens was a year round occurrence. She did not wear a mask or respirator and there was no requirement for her to wear them.

In an independent medical evaluation on December 1, 2014, Christopher Martin, M.D., detailed no findings. He instead stated that he needed the CT scan films, not just a report, and Dr. Waheed's treatment notes before he could make a recommendation in this case. In an April 17, 2015, addendum, Dr. Martin stated that he had reviewed the CT scans and Dr. Waheed's notes. Dr. Martin was unable to make a definitive diagnosis as the findings on the CT scan are not diagnostic of any specific disease. He stated they could represent interstitial pneumonia, sarcoid, or a chronic hypersensitivity pneumonitis. The upper zone dominance increases the likelihood of chronic hypersensitivity pneumonitis, which has been associated with exposure to pigeon droppings. However, some of Ms. Schetrompf's clinical features, such as weight gain and no flu like symptoms, weigh against that diagnosis. He recommended another CT scan to check for pattern evolution. He stated that the only test to clarify the diagnosis is a lung biopsy. He concluded that he was unable to provide a definitive answer as to whether Ms. Schetrompf's lung condition is occupational or non-occupational in nature.

Dr. Waheed testified in a deposition on June 11, 2015, that he specializes in pulmonary disease. Ms. Schetrompf had no prior significant lung history. She was first seen on October 4, 2013, and was diagnosed with dyspnea, hypoxia, and acute interstitial pneumonitis. Dr. Waheed stated that the CT scan performed on October 10, 2013, showed upper lobe predominant parenchymal destruction suggestive of pulmonary fibrosis. He opined that it was not idiopathic as that is mostly the lower lobe. It looked to him as if Ms. Schetrompf had some exposure to material where she worked and may have damaged her lungs. Testing on December 16, 2013, showed both obstruction and restrictive lung disease. The diagnosis now includes chronic obstructive pulmonary disease. Dr. Waheed asserted that he has records for a period of seven years before the alleged exposure that show Ms. Schetrompf was having shortness of breath.[1] Her condition has remained the same with some improvement. He opined that Ms. Schetrompf's condition was work-related based on the history, lung function testing, and CT scan.

Dr. Martin testified in a deposition on December 10, 2015, that he is a professor of medicine and occupational medicine. He stated that his work involves work-related health considerations and how health conditions impact an individual's ability to work. His opinions remained the same as in his reports.

The Office of Judges affirmed the claims administrator's rejection of the claim on May 13, 2016. It stated that the burden of supporting a claim for workers' compensation rests on the claimant. It found that pulmonary fibrosis can be idiopathic or related to occupational exposure due to hazardous dust or fiber levels. Ms. Schetrompf testified that she was exposed to bird droppings, dust, and smoke from ovens in the warehouse she worked in. The Office of Judges noted, however, that Dr. Waheed has not diagnosed her with histoplasmosis. Ms. Schetrompf's dust exposure was found to be nonspecific and per Dr. Martin's testimony, only certain kinds of dust cause fibrosis. In addition, she failed to introduce any of the radiographic evidence referred

---

[1] These reports were not introduced into the record.

to by Dr. Waheed in his deposition. Therefore, the Office of Judges concluded that Ms. Schetrompf failed to show a causal connection between her employment and her diagnoses of fibrosis and chronic obstructive pulmonary disease. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on October 21, 2016.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The burden of proof is on Ms. Schetrompf to show a causal connection between her employment and her diagnoses. The evidence submitted fails to show that her employment activities caused her pulmonary diagnoses.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  September 15, 2017**


**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker